## UNITED STATES DISTRICT COURT

## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| **CHRISTOPHER THORNE,** | : | |
| **Plaintiff,** | : | **Case No. 3:19cv24(VLB)** |
| | : | |
| **v.** | : | |
| | : | **September 23, 2021** |
| **CAPTAIN LEWIS, et al.** | : | |
| **Defendants.** | : | |

## MEMORANDUM OF DECISION GRANTING
## <u>HARRIS'S MOTION FOR SUMMARY JUDGMENT</u>

The plaintiff, Christopher Thorne ("Thorne"), is incarcerated at Osborn Correctional Institution in Somers, Connecticut.  Thorne initiated this action by filing a civil rights complaint asserting First, Fourth and Eighth Amendment claims against six employees of the State of Connecticut Department of Correction pertaining to incidents that occurred on March 1, and 2, 2018 at Cheshire Correctional Institution ("Cheshire").  Doc. No. 1.

Thorne subsequently filed an amended complaint raising the same federal constitutional claims against Captain Lewis, Lieutenants Hernandez and Calo and Nurse Harris.  Doc. No. 13.  On October 8, 2019, the Court dismissed the First Amendment religion claim asserted against Captain Lewis and concluded that the Fourth Amendment strip search and the Eighth Amendment excessive force claim should proceed against Captain Lewis and Lieutenant Hernandez in their individual capacities, the Eighth Amendment deliberate indifference to medical

needs claim should proceed against Nurse Harris in her individual capacity and the Eighth Amendment deliberate indifference to health claim should proceed against Lieutenant Calo in his individual capacity.  Doc. No. 15.  On January 19, 2021, the Court granted a motion for summary judgment filed by Defendants Lewis, Hernandez, Harris and Calo as to all claims except the Eighth Amendment deliberate indifference to medical needs claim asserted against Defendant Harris.  Doc. No. 27.

Pending before the Court is a supplemental motion for summary judgment filed by Defendant Harris.  For the reasons set forth below, the motion will be granted.

I.    Standard of Review

When filing a motion for summary judgment, the moving party bears the burden of demonstrating "that there is no genuine dispute as to any material fact and [that it] is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) ("Factual disputes that are irrelevant or unnecessary" are not material and thus cannot preclude summary judgment.").  A factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Id.*

If a motion for summary judgment is supported by documentary evidence and sworn affidavits and "demonstrates the absence of a genuine issue of material fact," the nonmoving party must do more than vaguely assert the

existence of some unspecified disputed material facts or "rely on conclusory allegations or unsubstantiated speculation." *Robinson v. Concentra Health Servs., Inc.*, 781 F.3d 42, 44 (2d Cir. 2015) (citation omitted).  Thus, the party opposing the motion for summary judgment "must come forward with specific evidence demonstrating the existence of a genuine dispute of material fact." *Id.*

In reviewing the record, the Court must "construe the evidence in the light most favorable to the non-moving party and to draw all reasonable inferences in its favor." *Gary Friedrich Enters., L.L.C. v. Marvel Characters, Inc.*, 716 F.3d 302, 312 (2d Cir. 2013) (citation omitted).  The Court may not, however, "make credibility determinations or weigh the evidence. . . . [because] [c]redibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Proctor v. LeClaire*, 846 F.3d 597, 607–08 (2d Cir. 2017) (internal quotation marks and citations omitted).  If there is any evidence in the record from which a reasonable factual inference could be drawn in favor of the opposing party on the issue on which summary judgment is sought, however, summary judgment is improper. *See Security Ins. Co. of Hartford v. Old Dominion Freight Line Inc.*, 391 F.3d 77, 83 (2d Cir. 2004).

Where one party is proceeding *pro se*, the Court reads the *pro se* party's papers liberally and interprets them "to raise the strongest arguments that they suggest." *Willey v. Kirkpatrick*, 801 F.3d 51, 62 (2d Cir. 2015) (internal quotation marks and citation omitted).  Despite this liberal interpretation, however,

allegations unsupported by admissible evidence "do not create a material issue of fact" and cannot overcome a properly supported motion for summary judgment. *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000).

II.     Facts

The relevant facts are taken from Defendants' Local Rule 56(a)1 Statement ("L.R. 56(a)1"), [Doc. No. 31-8], as supported by the admissible evidence contained in Attachments A and B thereto, [Doc. Nos. 31-2 to 31-6], filed in support of the Local Rule 56(a)1 Statement; Thorne's Local Rule 56(a)2 Statement ("L.R. 56(a)2"), [Doc. No. 35-2], as supported by the admissible evidence contained in Attachments A – D thereto, [Doc. Nos. 35-4 to 35-6], filed in support of the Local Rule 56(a)2 Statement; and the verified Amended Complaint, [Doc. No. 13].

On March 1, 2018, at Cheshire, correctional officers strip-searched Thorne and then searched his cell. Am. Compl. ¶ 1. During the search, the officers found nude photographs belonging to Thorne. *Id.* Captain Lewis escorted Thorne to the restrictive housing unit and ordered him to undergo a visual body cavity search. *Id.* ¶ 2. Thorne refused to submit to the search. *Id.* ¶ 3. Captain Lewis placed Thorne on in-cell restraint status due to his failure to comply with the order that he undergo a strip search. *Id.* ¶ 4.

As of March 1, 2018, Thorne was prescribed Gabapentin, to alleviate pain in his back. L.R. 56(a)2 ¶ 3; Attach C, Doc. No. 35-5. The prescription called for Thorne to take the medication twice per day. [*Id.*] During his confinement on in-

cell restraints, Thorne experienced pain in his back and requested medication to alleviate the pain.  Am. Compl. ¶ 5.  Nurse Harris did not respond to Thorne's request.  *Id.* ¶ 6.  Thorne asked Lieutenant Calo to remove the restraints because they were painful.  *Id.* ¶ 5.  In the early morning hours of March 2, 2018, Thorne agreed to undergo as strip search.  *Id.* ¶ 7.  Lieutenant Hernandez did not release Thorne from in-cell restraints until 5:00 p.m. on March 2, 2018.  *Id.* ¶ 8; L.R. 56(a)2, Attach D, Doc. No. 35-6.  Thorne alleges that Nurse Hill was deliberately indifferent to his medical needs on March 1, 2018.  L.R. 56(a)1 ¶ 1.

III.    Discussion

Defendant Harris argues that she is entitled to summary judgment because Thorne failed to exhaust his administrative remedies as to the deliberate indifference to medical needs claim asserted against her.  Thorne contends that his administrative remedies were unavailable.

The Prison Litigation Reform Act, 42 U.S.C. § 1997e(a) ("PLRA"), requires a prisoner to exhaust "administrative remedies as are available" before bringing an "action ... with respect to prison conditions."  This requirement applies to all claims pertaining to "prison life, whether they involve general circumstances or particular episodes."  *Porter v. Nussle*, 534 U.S. 516, 532 (2002).  Exhaustion of available administrative remedies must occur regardless of whether the inmate may obtain the specific relief he desires through the administrative process.  *Booth v. Churner*, 532 U.S. 731, 741 (2001).

Additionally,   an   inmate   must   "proper[ly]   exhaust[]"   his   or   her

administrative remedies which includes complying with all "procedural rules," including filing deadlines, as set forth in the particular prison grievance system. *Woodford v. Ngo*, 548 U.S. 81, 90-91 (2006) (proper exhaustion "means using all steps that the agency holds out ... (so that the agency addresses the issues on the merits) ... [and] demands compliance with agency deadlines and other critical procedural rules").   Consequently, neither "untimely" nor "otherwise procedurally defective attempts to secure administrative remedies" meet "the PLRA's exhaustion requirements."  *Ruggiero v. County of Orange*, 467 F.3d 170, 176 (2d Cir. 2006) (citing *Woodford*, 548 U.S. at 83-84).

In *Ross v. Blake*, 136 S. Ct. 1850 (2016), the Supreme Court reviewed and rejected judicially created exceptions to the exhaustion requirement of the PLRA. *Id.* at 1862 ("Courts may not engraft an unwritten special circumstances exception onto the PLRA's exhaustion requirement.") (internal quotation marks omitted).  The Court held that the PLRA includes a single "textual exception" – that an inmate must only exhaust remedies that are "available" to him or her.  *Id.* at 1858.   Thus, other than the requirement that administrative remedies be available, there are "no limits on an inmate's obligation to exhaust" regardless "of any 'special circumstances'" that might exist.  *Id.* at 1856.

The Supreme Court identified three situations in which administrative procedures are officially adopted by a prison facility but are not "capable of use [by an inmate] to obtain some relief for the action complained of" and therefore are "unavailable."  *Id.* at 1859.  First, an administrative remedy may be unavailable

when "it operates as a simple dead end—with officers unable or consistently unwilling to provide any relief to aggrieved inmates." *Id.* Second, "an administrative scheme might be so opaque that it becomes, practically speaking, incapable of use" because an "ordinary prisoner can[not] discern or navigate it" or "make sense of what it demands." *Id.* (citations omitted). Third, an administrative remedy may be unavailable "when prison administrators' thwart inmates from taking advantage of a grievance process through machination, misrepresentation, or intimidation." *Id.* at 1860.

Failure to exhaust administrative remedies under 42 U.S.C. § 1997e(a) is an affirmative defense. *See Jones v. Bock*, 549 U.S. 199, 215 (2007). Thus, defendant prison officials have the burden of proving that an inmate did not exhaust his or her claim prior to filing a complaint in federal court. *See Williams v. Priatno*, 829 F.3d 118, 126, n.6 (2d Cir. 2016) (citations omitted).

Defendants raised the defense of non-exhaustion in their answer to the amended complaint. *See* Doc. No. 19. Furthermore, there is no dispute that the administrative remedies set forth in State of Connecticut Department of Correction Administrative Directive 8.9, Administrative Remedy for Health Services, were in effect as of March 1, 2018. *See* L.R. 56(a)1, Attach. A, Doc. No. 31-2 (Admin. Dir. 8.9, in effect as of July 24, 2012).[1]  Nor does Thorne dispute that

---

[1] The Court notes that on April 30, 2021, a revised version of Administrative Directive 8.9 became effective and replaced the prior version of Administrative Directive 8.9 that had been in effect since July 24, 2012.  *See* https://portal.ct.gov/DOC/AD/AD-Chapter-8.  The version of Administrative Directive 8.9 that became effective July 24, 2012 is applicable to Thorne's claim

7

he was familiar with the Administrative Remedies procedures set forth in that Directive as of March 1, 2018.  *See* L.R. 56(a)2 ¶ 2; Administrative Remedies Log, Doc. No. 31-4.

Administrative Directive 8.9 provides Health Services Review procedures to address two types of issues or claims related to the medical, dental or mental health care of an inmate: (1) Diagnosis and Treatment issues and (2) Administrative health care issues involving a procedure, practice, policy or the improper conduct of a health services provider.  *See* L.R. 56(a)1, Attach. A, Doc. No. 31-2, Administrative Directive 8.9(9)(A) & (B).  An inmate seeking review of an issue involving a diagnosis or treatment or an administrative health care issue involving a procedure, practice, policy or the improper conduct of a health services provider must first attempt to seek informal resolution either by speaking to the appropriate staff member or by sending a written request to a supervisor.  *Id.* at 8.9(10).  The supervisor must respond to a written attempt at informal resolution within fifteen calendar days of receipt of the request.  *Id.*  If the informal resolution of the inmate's issue is unsatisfactory or unsuccessful, the inmate may apply for a Health Services Review using the Inmate Administrative Remedy Form, CN 9602, and checking off either the Diagnosis/Treatment box or the All Other Health Care Issues box for an administrative issue.  *Id.* at 8.9(11) & (12).

---

that Nurse Harris was deliberately indifferent to his medical needs on March 1, 2018.

8

If the inmate seeks review of a diagnosis or the treatment or lack of treatment of a medical, dental or mental health condition, the Health Services Review Coordinator is required to schedule a Health Services Review Appointment with a physician, dentist, psychologist, psychiatrist, or advanced practice registered nurse ("APRN"), as appropriate, as soon as possible. *Id.* at 8.9(11)(A). If, after the appointment, the physician, dentist, psychologist, psychiatrist or APRN concludes that the existing diagnosis or treatment is appropriate, the inmate is deemed to have exhausted his or her health services review remedy. *Id.* If the physician, dentist, psychologist, psychiatrist or APRN reaches a different conclusion with regard to the appropriate diagnosis or course of treatment for the inmate's condition, he or she may either provide the appropriate diagnosis or treatment or refer the case to the Utilization Review Committee for authorization indicating the need for different treatment. *Id.* at 8.9(11)(B).

If the inmate seeks review of an administrative health care issue, including the improper conduct of a health care provider, the Health Services Coordinator is required to evaluate, investigate and decide the matter within thirty days. *Id.* at 8.9(12)(A). If the inmate is not satisfied with the response to his or her request for review, he or she may appeal the decision within ten business days of receiving the decision. *Id.* at 8.9(12)(B). The health services provider or the designated facility health services director must decide the appeal "within fifteen business days of receiving the appeal." *Id.* at 8.9(12)(C). If the issue being raised "relates

to a health services policy of the Department, the inmate may appeal to the DOC Director of Health Services within ten business days of" receiving the decision from the health services provider or designated facility health services director. *Id.* at 8.9(12)(D).

Defendant Harris has filed the Declaration of Medical Grievance Coordinator Debra Cruz in support of the argument that Thorne has failed to exhaust his available health care administrative remedies as to the Eighth Amendment deliberate indifference to medical needs claim. *See* L.R. 56(a)1, Cruz Decl., Attach B, Doc. No. 31-3. Attached to the Declaration is a grievance log as well as copies of inmate requests, a grievance related to a medical issue and a health services review request filed by Thorne from November 2017 to July 2018. *Id.* at 3-158. Thorne does not dispute the truthfulness of the Declaration of Grievance Coordinator Cruz or that the grievance log accurately identifies inmate requests, grievances and health services review requests that he filed from April 2015 to June 2020. *See* L.R. 56(a)2 ¶¶ 2-4; Cruz Decl., Attach B, Doc. No. 31-3; Exhibits, Doc. Nos. 31-4 to 31-6.

Defendant Harris argues that Thorne failed to exhaust his available administrative remedies prior to filing this lawsuit because he did not file a Health Services Review request of her March 1, 2018 refusal to respond to his requests for medication to treat his back pain or to dispense the pain medication that had been previously prescribed to him.

Thorne contends that his remedies were unavailable because prior to his

placement on in-cell restraints on March 1, 2018, he filed a grievance seeking a refill of his prescription medication to alleviate his back pain and a physician agreed to prescribe the medication.[2]   *See* Cruz Decl., Exhibits, Doc. No. 31-5. Thus, at the time of the response to his grievance on January 12, 2018, no further action was necessary on the part of the medical grievance coordinator or medical provider.   *Id.* at 1-2.   Thorne's successful November 2017 grievance does not constitute exhaustion of his administrative remedies to grieve Nurse Harris' failure to administer the medication on March 1, 2018.   *See e.g.*, *White v. Velie*, 709 F. App'x 35, 36–39 (2d Cir. 2017) (summary order) (Rejecting as meritless argument that exhaustion of administrative remedies as to claim of excessive force and subsequent denial of medical treatment was unnecessary due to fact that inmate "previously filed grievances about similar incidents" because inmate did not allege that he had filed "'a prior grievance identif[ying] a *specific and continuing* complaint that ultimately became the basis'" of the current action and had failed to identify any grievances that "raised the same issues underlying th[e] [current] action") (emphasis in original; quoting *Johnson v. Killian*, 680 F.3d 234, 239 (2d Cir. 2012)).   On the contrary, had a physician not prescribed pain medication Nurse Harris could not have administered it.   Only had it been prescribed would Thorne be able to claim Nurse Harris was deliberately

---

[2]   **This argument relates to a prior grievance complaint her filed on November 30, 2017, which pertained to the discontinuation of a medication previously prescribed to treat back pain.   *Id.* ¶ 3.   On January 12, 2018, a medical grievance coordinator received and responded to the grievance.   *Id.*; Cruz Decl. ¶ 6, Attach B, Doc. No. 31-3; Exhibits, Doc. No. 31-5.**

indifferent to his medical needs by withholding prescribed medication.

As stated above, Administrative Directive 8.9 provides a remedy for both a health care issue involving a diagnosis or treatment and a health care issue involving a procedure, practice, policy or the improper conduct of a health services provider.  One of the purposes of the exhaustion requirement set forth in 42 U.S.C. 1997e(a) is to "afford[] corrections officials time and opportunity to address complaints internally before allowing the initiation of a federal case." *Porter*, 534 U.S. at 524–25.  Thus, even though Thorne alleges that medical providers dispensed his prescribed pain medication to him shortly after officials removed him from in-cell restraints on March 2, 2018, he was still required to exhaust his available remedies under Administrative Directive 8.9 as to his claim about Nurse Harris's conduct involving her failure to respond to his complaints of pain prior to filing this action.  *See e.g.*, *Ruggiero*, 467 F.3d at 178 (noting that "several purposes" are served by "[g]iving prison officials the first opportunity to address prisoners' complaints" and that although "Ruggiero may not have been interested in the results that pursuing his claim through OCCF's grievance procedure would have yielded, the larger interests at stake under the PLRA were at issue, and thus exhaustion was required.") (citing *Porter,* 534 U.S. at 325).

Thorne concedes that he did not file a request for health services review regarding Nurse Harris's alleged refusal, on March 1, 2018, to provide treatment or medication for his back pain.  Thorne has submitted no evidence to support his argument that he should be excused from exhausting his administrative

remedies because the remedies applicable to the conduct of Nurse Harris were unavailable to him.

The Court concludes that Nurse Harris has met her burden of demonstrating the absence of a material fact in dispute regarding Thorne's failure to exhaust available administrative remedies as to the Eighth Amendment claim of deliberate indifference to medical needs.  The motion for summary judgment is granted on the ground that Thorne neglected to exhaust his available administrative remedies as to this Eighth Amendment claim prior to commencing this action.

IV.   <u>Conclusion</u>

The Supplemental Motion for Summary Judgment, [Doc. No. 31], filed by Defendant Harris, is GRANTED.  The Clerk is directed to enter judgment for the defendants and to close the case.

SO ORDERED at Hartford, Connecticut.

_____/s/_____
Vanessa L. Bryant
United States District Judge

13